Filed 7/16/26  Vaghashia v. Vaghashia CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| GOVIND R. VAGHASHIA et al., Plaintiffs and Appellants, v. PRASHANT VAGHASHIA et al., Defendants and Respondents. | B352446 (Los Angeles County Super. Ct. No. 25STCV11089) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Jon R. Takasugi, Judge.  Reversed and remanded with directions.

Moskovitz Appellate Team, Myron Moskovitz, Jason R. Marks; Fagelbaum & Heller and Jerold Fagelbaum for Plaintiffs and Appellants.

Shah Attorney Group, Earth A. Shah; M. Cris Armenta and M. Cris Armenta for Defendants and Appellants.

———————————————

## INTRODUCTION

Plaintiffs Govind R. Vaghashia, Sonal G. Vaghashia, Sundeep G. Vaghashia, and Graphics RSCH Properties, LLC (Govind Parties) appeal from the judgment of dismissal entered after the trial court sustained without leave to amend defendants Prashant Vaghashia and Mita Vaghashia's demurrer to the Govind Parties' complaint.[1]  On appeal, the Govind Parties argue that the court engaged in improper factfinding to negate the allegations in their complaint and erred in finding all their claims are barred by either the doctrine of judicial estoppel or a release of liability clause included in a settlement agreement between the parties.  We agree and reverse the court's order sustaining the demurrer.

## BACKGROUND

**1.    Family history and prior lawsuits**

Govind and Prashant are brothers who were born and raised in India.  Govind moved to the United States in the 1970's and started a career investing in real estate and managing hotels.  Several years later, Prashant moved to the United States and acquired interests in some of Govind's real estate and businesses.

After Govind and Prashant's relationship deteriorated, Prashant and his wife Mita sued Govind, his wife Sonal, and other parties.  Prashant and Mita claimed a 50 percent interest in a business portfolio that they claimed they built with Govind and others.  Govind later sued Prashant and a company that Govind and Prashant owned together, alleging Prashant

---

[1]    Because they share the same last name, we refer to the individual Vaghashia parties by their first names.

2

mismanaged the company. Prashant and Mita filed a cross-complaint in Govind's lawsuit, again asserting a 50 percent interest in the business portfolio at issue in their own lawsuit.

In June 2022, the parties entered a settlement agreement, through which Govind, Sonal, and others agreed to pay Prashant and Mita $35 million. After disputes arose over the interpretation of the agreement, Govind and Prashant filed competing motions to enforce it. In December 2022, the trial court entered an order enforcing the settlement agreement largely in the manner requested by Prashant, while rejecting the proposed interpretations of the agreement offered by Govind.

In January 2023, Govind moved to vacate the settlement agreement on numerous grounds, including unilateral and mutual mistakes about the parties' understanding of the legality of certain terms included in the agreement. The trial court denied Govind's motion, finding, among other things, that Govind was judicially estopped from challenging the settlement agreement after he moved to enforce it.

In October 2024, a different panel from this division affirmed the trial court's order in a published decision, *Vaghashia v. Vaghashia* (2024) 106 Cal.App.5th 188 (*Vaghashia*), on the grounds that Govind was judicially estopped from challenging the settlement agreement. Among other things, we concluded that all the facts on which Govind sought to vacate the settlement agreement were known to him before the court issued its order enforcing the agreement. (*Id*. at p. 197.)

After we issued the remittitur in *Vaghashia*, Prashant tried to collect payments on the appellate bonds that Govind posted. Govind objected to Prashant's requests for payment. The trial

3

court overruled Govind's objections and granted Prashant's requests for payments on the appellate bonds.

## 2.    The current lawsuit

On April 15, 2025, the Govind Parties filed this lawsuit against Prashant and Mita, asserting causes of action for (1) rescission of the settlement agreement; (2) fraud; (3) breach of fiduciary duty; and (4) intentional infliction of emotional distress. As to the first cause of action, the Govind Parties sought an order rescinding the settlement agreement, an order requiring, among other things, Prashant and Mita to repay all sums paid to them under the agreement, and an award of exemplary and punitive damages. As to the remaining causes of action, the Govind Parties sought general, special, exemplary, and punitive damages.

With respect to the first three causes of action, the Govind Parties alleged that Prashant and Mita intentionally concealed material facts to induce the Govind Parties to sign the agreement. First, the Govind Parties alleged that before the settlement agreement was executed, Prashant represented that he had the authority to sign the agreement on behalf of two companies that were parties to it—Graphics Research, Inc. (GRI), a California corporation, and Empire Hospitality Inc. (Empire), an Arkansas corporation—even though both of those companies' corporate statuses were suspended when the agreement was signed. The Govind Parties further alleged that Prashant and Mita were aware, but intentionally failed to disclose, that GRI's and Empire's corporate statuses were suspended. Second, the Govind Parties alleged that before the settlement agreement was executed, Prashant used, without Govind's knowledge or permission, Govind's name and other identifying information to

4

obtain federal loans on GRI's behalf. The Govind Parties alleged that they did not become aware of these facts, including Prashant's and Mita's roles in concealing them, until sometime in 2025, and that they would not have signed the settlement agreement had they been aware of these facts at the time the agreement was executed.

As to the fourth cause of action, the Govind Parties alleged that before the settlement agreement was executed, Prashant engaged in extreme and outrageous conduct that caused Govind to suffer humiliation and mental and physical distress, including concealing the facts discussed above, forging Govind's signature to fabricate an agreement between Govind and Prashant, stealing documents from Govind's office, and surreptitiously recording conversations between Govind and Prashant.

Prashant and Mita demurred to the Govind Parties' complaint. They argued that the first cause of action for rescission of the settlement agreement was barred by judicial estoppel. They argued that the second through fourth causes of action were barred by a clause in the settlement agreement releasing them from liability for any conduct occurring before the agreement was executed. Although Prashant and Mita asserted in their notice of demurrer that the second through fourth causes of action are also barred by judicial estoppel, they did not develop any arguments in the demurrer's memorandum of points and authority to support that assertion. Prashant and Mita did not raise in their demurrer any other grounds for challenging the complaint.

In support of their demurrer, Prashant and Mita filed a request for judicial notice of numerous documents from the parties' prior lawsuits, including Govind and Sonal's motion and

5

ex parte application to enforce the settlement agreement, their motion to vacate the settlement agreement, their opening brief in *Vaghashia*, and this division's opinion in *Vaghashia*.

The Govind Parties opposed the demurrer. They asked the court to take judicial notice of a letter from the United States Small Business Administration addressed to Govind and the reporter's transcript from a hearing in a related lawsuit.

In support of their reply, Prashant and Mita filed a request for judicial notice of a screenshot from the California Secretary of State's website showing that GRI was suspended by California's Franchise Tax Board in September 2021 and a screenshot from the Arkansas Secretary of State's website showing Empire was in good standing. The screenshot from the Arkansas Secretary of State's website does not show, however, on what date the site was accessed or as of what date Empire was deemed to be in good standing.

The trial court sustained Prashant and Mita's demurrer without leave to amend. The court found that the Govind Parties' first cause of action for rescission of the settlement agreement was barred by judicial estoppel. The court rejected the allegation that Prashant and Mita intentionally concealed that GRI's corporate status was suspended to induce Govind to sign the settlement agreement, and instead found the Govind Parties were aware of GRI's status before Govind and Sonal moved to enforce the settlement agreement. In making that finding, the court relied on a document included in the record from the parties' prior appeal, which was not included in any of the parties' requests for judicial notice concerning Prashant and Mita's demurrer in this case. That document is an October 13, 2022 e-mail sent by one of Govind and Sonal's attorneys to

6

Prashant's attorney, in which Govind's attorney stated, "[w]e now understand from the secretary of the state of California that GRI was never dissolved in compliance with the law and GRI remains as a suspended corporation in the state of California."

To the extent the Govind Parties' rescission cause of action was based on the allegation that Prashant and Mita intentionally concealed Empire's corporate status to induce Govind to sign the agreement, the trial court found that claim lacked merit because Empire's operating status had since been restored. The court did not explain what evidence it relied on to find Empire's corporate status had been restored.

The trial court also found that the Govind Parties' claims were barred by the settlement agreement's release clause because all the alleged conduct giving rise to their claims occurred before the agreement was executed.

Finally, applying principles of collateral estoppel, the court found that to the extent some of the Govind Parties in this lawsuit were not parties to Govind and Sonal's efforts to enforce the settlement agreement, those parties were in privity with Govind and Sonal such that they were judicially estopped from challenging the settlement agreement.

The court entered judgment dismissing the Govind Parties' complaint with prejudice. The Govind Parties appeal.

### DISCUSSION

The Govind Parties contend that the trial court erred when it sustained without leave to amend Prashant and Mita's demurrer to their complaint by relying on judicial estoppel principles and a release clause contained in the parties' settlement agreement. Because those are the only grounds that were raised in Prashant and Mita's demurrer and relied on by

7

the court in sustaining the demurrer, we limit our analysis to whether judicial estoppel and the settlement agreement's release clause bar the Govind Parties' claims. (See *TracFone Wireless, Inc. v. County of Los Angeles* (2008) 163 Cal.App.4th 1359, 1363 (*TracFone Wireless*) [a reviewing court may affirm judgment of dismissal only on grounds raised in demurrer].) As we explain, the trial court erred in sustaining the demurrer on both of those grounds.

1. **Standard of review**

We independently review a trial court's order sustaining a demurrer to determine whether the operative complaint alleges facts sufficient to state a cause of action. (*Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 725.) We assume the truth of all properly pled factual allegations and matters that are judicially noticeable, and we liberally construe the complaint's allegations with a view toward substantial justice. (*Ibid.*; *Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 43, fn. 7.)

2. **At the demurrer stage, judicial estoppel does not bar the Govind Parties' claims**

Judicial estoppel is an equitable doctrine designed to prevent fraud on the courts. (*Thomas v. Gordon* (2000) 85 Cal.App.4th 113, 118.) The doctrine "precludes a party from relying upon a theory in a legal proceeding inconsistent with one previously asserted." (*Nist v. Hall* (2018) 24 Cal.App.5th 40, 48.)

Judicial estoppel " 'applies when "(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are

8

totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake." ' " (*Vaghashia, supra,* 106 Cal.App.5th at p. 195, quoting *Aguilar v. Lerner* (2004) 32 Cal.4th 974, 986–987 (*Aguilar*).)  Although cases applying judicial estoppel "have generally been decided after a fact-finding or evidence-reviewing proceeding of some sort" (*Cloud v. Northrop Grumman Corp.* (1998) 67 Cal.App.4th 995, 1019), a trial court may sustain a demurrer on judicial estoppel grounds if the pleaded and judicially noticed facts indicate as a matter of law that the doctrine should apply.  (*The Swahn Group, Inc. v. Segal* (2010) 183 Cal.App.4th 831, 844.)

The Govind Parties do not dispute that the first four elements of judicial estoppel are satisfied here.  Instead, they contend factual issues exist as to the fifth element—i.e., whether the first of two inconsistent positions that they took with respect to the enforceability of the settlement agreement resulted from fraud, ignorance, or mistake.  They also contend that the trial court engaged in impermissible factfinding to conclude, as a matter of law, that the fifth element was satisfied in this case. These arguments have merit.

One of the grounds for rescission of the settlement agreement alleged in the Govind Parties' complaint is that Prashant and Mita fraudulently concealed that GRI's and Empire's corporate statuses were suspended at the time the agreement was executed to induce the Govind Parties to sign the agreement.  The Govind Parties alleged that they would not have signed the agreement had they been aware that both companies' corporate statuses were suspended.  The Govind Parties also alleged that they did not discover that the companies' corporate statuses were suspended until February 2025, over two years

9

after Govind and Sonal moved to enforce the agreement. These allegations, on their face, support a finding that Govind and Sonal took their first inconsistent position—i.e., seeking to enforce the settlement agreement—before they became aware of facts that they claim would have prevented them from signing the agreement and later seeking to enforce it.

The trial court, however, found that Govind and Sonal were aware of GRI's corporate status before they sought to enforce the settlement agreement based on evidence included in the appellate record from *Vaghashia*. Specifically, the court relied on the content of an e-mail that one of Govind and Sonal's attorneys sent to Prashant's attorney several days before Govind and Sonal moved to enforce the agreement. As we noted above, Govind and Sonal's attorney stated in the e-mail that "[w]e now understand from the secretary of the state of California that … GRI remains as a suspended corporation in the state of California." Based on this statement, the court found that when they moved to enforce the agreement, Govind and Sonal were aware that GRI's corporate status was suspended at the time the agreement was executed. In other words, the court found that when they first sought to enforce the settlement agreement, Govind and Sonal were not ignorant of the facts that the Govind Parties now rely on to challenge the agreement. (See *Aguilar*, *supra*, 32 Cal.4th at p. 987.) This finding was improper at the demurrer stage.

The trial court erred by relying on extrinsic evidence—i.e., the contents of an e-mail from one of Govind and Sonal's attorneys—to make an adverse factual finding that contradicts the complaint's allegations. It is well settled that "the 'demurrer tests the pleading alone and not the evidence or other extrinsic matters which do not appear on the face of the pleading or cannot

10

be properly inferred from the factual allegations of the complaint. This principle means that if the pleading sufficiently states a cause of action, the demurrer cannot be granted on the basis of a showing of extrinsic matters by inference from attached exhibits, affidavits or otherwise except those matters which are subject to judicial notice.' " (*Bach v. McNelis* (1989) 207 Cal.App.3d 852, 864.)

In any event, the contents of the e-mail sent by Govind and Sonal's attorney do not support the court's finding. As the Govind Parties point out, the attorney noted only that "GRI remains as a suspended corporation in the state of California." The attorney did not state when GRI's corporate status was suspended or that it was suspended at the time the settlement agreement was executed. Thus, the contents of the e-mail, without more, do not support a finding that when they moved to enforce the settlement agreement, Govind and Sonal were aware that GRI's corporate status was suspended at the time the settlement agreement was executed.

The court also erred when it concluded that the rescission cause of action lacks merit to the extent it relies on allegations that Empire's corporate status was suspended when the settlement agreement was executed. In reaching this conclusion, the court found that Empire's corporate status has since been restored. The court reasoned that once Empire's corporate status was restored, the agreement would be enforceable as to that company even if its corporate status had been suspended when the agreement was executed.

Although the trial court did not explain what evidence it relied on to find Empire's corporate status has since been restored, it presumably relied on the screenshot from the

11

Arkansas Secretary of State's website that Prashant and Mita included in one of their requests for judicial notice. That screenshot states that Empire's corporate status was in "good standing," and Prashant and Mita relied on that screenshot to argue as much below. But, as we noted above, the screenshot does not indicate when it was taken, when the Arkansas Secretary of State's website was accessed, or as of what date Empire's corporate status was deemed to be in "good standing." Thus, even assuming it was proper for the court to rely on the screenshot to contradict the complaint's allegations, the screenshot does not, without more, establish Empire's corporate status is currently in good standing.

In sum, the allegations in the Govind Parties' complaint support a finding that Govind and Sonal took their first inconsistent position—seeking to enforce the settlement agreement—before they became aware of facts that form the basis for their rescission claim, and nothing in the record conclusively negates those allegations. The trial court, therefore, erred in finding that judicial estoppel bars that cause of action to the extent it is based on allegations that Prashant and Mita fraudulently concealed GRI's and Empire's corporate statuses when the settlement agreement was executed. Because Prashant and Mita's demurrer challenges the first cause of action on judicial estoppel grounds only, the trial court should have overruled the demurrer as to that claim. (See *TracFone Wireless*, *supra*, 163 Cal.App.4th at p. 1363.) To the extent the court found that judicial estoppel bars the Govind Parties' claims for fraud and breach of fiduciary duty, which are based on the same factual allegations as their claim for rescission of the settlement

12

agreement, that finding too was error for the reasons we just discussed.

### 3. The settlement agreement's release clause does not bar the Govind Parties' claims at demurrer

The Govind Parties contend that the trial court erred in finding their claims are also barred by the settlement agreement's release clause because they alleged that Prashant and Mita fraudulently induced them to enter the agreement by intentionally misrepresenting facts that were material to the agreement's formation. According to the Govind Parties, a contractual release of liability like the one included in the settlement agreement is unenforceable if the party challenging the contract containing the release can show that the contract was fraudulently induced. This argument has merit.

Paragraph 15 of the settlement agreement, entitled "Full, General Release—Govind Parties," provides in relevant part that the Govind Parties "release and absolutely discharge" Prashant and Mita from "any and all claims, … suits, actions and causes of action, of every kind and nature whatsoever, at law or in equity, known or unknown, suspected or unsuspected, from the beginning of time up through the execution of this Agreement." Paragraph 17 of the agreement states that all the parties to the agreement waive any rights that may be conferred to them under Civil Code section 1542, which provides that a general release does not extend to claims that the releasing party does not know or suspect at the time the agreement was executed. Because the allegations supporting the Govind Parties' causes of action all occurred before the settlement agreement was executed, the court found that the release clause barred those claims.

13

Civil Code section 1668 provides, however, that "[a]ll contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." As other courts have explained, "[i]t is well established in California that a party to a contract is precluded under [Civil Code] section 1668 from contracting away his or her liability for fraud or deceit based on intentional misrepresentation." (*Manderville v. PCG&S Group, Inc.* (2007) 146 Cal.App.4th 1486, 1500 (*Manderville*).) That is, a party to a contract " 'cannot escape liability for his own fraud or false representations by the insertion of provisions' " that release that party from liability for those representations. (*Ibid.*) A release or waiver provision will " 'be ignored, and parol evidence of misrepresentations will be admitted, for the reason that fraud renders the whole agreement voidable, including the waiver provision.' " (*Id.* at p. 1501.)

Here, the Govind Parties alleged that they were fraudulently induced to sign the settlement agreement because Prashant and Mita intentionally misrepresented facts that were material to the agreement's formation, such as the corporate status of two of Prashant's companies that are parties to the agreement. The Govind Parties alleged that but for those misrepresentations, they would not have entered the agreement. If the Govind Parties were to prove that the agreement was fraudulently induced, the agreement, including its release clause, would be voidable and subject to rescission. (*Manderville*, *supra*, 146 Cal.App.4th at pp. 1500–1501.)

Prashant and Mita argue that the trial court properly invoked the settlement agreement's release clause to sustain

their demurrer because the Govind Parties could have verified GRI's and Empire's corporate statuses through publicly available information, such as via the California Secretary of State's and the Arkansas Secretary of State's websites, before they signed the agreement.  Consequently, Prashant and Mita argue, it was unreasonable for the Govind Parties to rely on any intentional misrepresentations about those companies' corporate statuses because the true facts could have been discovered with reasonable diligence.  We disagree.

As our Supreme Court has explained, "[n]egligence on the part of the plaintiff in failing to discover the falsity of a statement is no defense when the misrepresentation was intentional rather than negligent. … The fact than an investigation would have revealed the falsity of the misrepresentation will not alone bar [the plaintiff's] recovery [citation], and it is well established that [the plaintiff] is not held to constructive notice of a public record which would reveal the true facts." (*Seeger v. Odell* (1941) 18 Cal.2d 409, 414–415.)  Here, the Govind Parties alleged that Prashant and Mita intentionally misrepresented or concealed facts that were material to the settlement agreement's formation.  Thus, whether the Govind Parties could have discovered those facts through reasonable diligence does not mean that they are precluded, as a matter of law, from relying on them as a basis for their fraud and other claims.  (*Ibid.*)

Finally, we note that the Govind Parties' fourth cause of action for intentional infliction of emotional distress does not challenge the validity of the settlement agreement and arises solely out of conduct that would fall within the scope of the release clause.  Ordinarily, that claim would be barred by the settlement agreement's release clause.  However, should the

15

Govind Parties succeed in rescinding or voiding the agreement through their other causes of action, the release clause would not preclude their claim for intentional infliction of emotional distress. Because Prashant and Mita challenged the claim for intentional infliction of emotional distress only based on the agreement's release clause, and because the Govind Parties have asserted causes of action that, if successful, would render the agreement and the release clause voidable, the court should not have dismissed the claim for intentional infliction of emotional distress.

## DISPOSITION

The order sustaining the demurrer without leave to amend is reversed. The matter is remanded to the trial court with directions to enter a new order overruling the demurrer. The Govind Parties shall recover their costs on appeal.


VIRAMONTES, J.


WE CONCUR:


STRATTON, P. J.


WILEY, J.


16